UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LEE GLEASON, Jr., | No. 2:19-cv-621-WBS-EFB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| M. VOONG, et al., | |
| Defendants. | |

Plaintiff proceeds in this section 1983 suit without counsel and alleges that: (1) defendants Williams, Moss, Myers, Justin, and Lee for violating his First Amendment right to send mail and to be free from retaliation for engaging in activity protected by the First Amendment; (2) defendant Johnson retaliated against him for protected activity in violation of the First Amendment; and (3) defendants[1] Williams, Myers, Moss, and Justin for violating his right to procedural due process under the Fourteenth Amendment. ECF No. 1; ECF No. 9 (court's screening order). Now, defendants Justin, Lee, Moss, Myers, and Williams (hereinafter "defendants") have filed a motion to dismiss the claims against them. ECF No. 26. Plaintiff has filed an opposition (ECF No. 28) and defendants have filed a reply (ECF No. 29). For the reasons stated hereafter, the court recommends that defendants' motion be granted.

---

[1] The motion does not address any of the claims against defendant Johnson or the retaliation claim against defendant Lee.

1

After briefing for the motion to dismiss was completed, plaintiff filed an unauthorized surreply. ECF No. 32. In response, defendants filed a motion for court intervention wherein they argued that plaintiff included abusive, sexually harassing language in that surreply. ECF No. 33. They request that the court instruct plaintiff that such language will not be tolerated. *Id.* at 7. As discussed below, the court grants that request and instructs plaintiff that further harassment and similar crude attacks will result in sanctions including possible dismissal of this action.

I. <u>Motion to Dismiss</u>

<u>Background</u>

Plaintiff alleges that, in September 2015 and while incarcerated, he sent a letter to Dr. Krystal Neely, a person with whom he had had brief interactions many years prior. ECF No. 1 at 5. Dr. Neely's husband (Michael Neely) contacted prison officials to complain about plaintiff's unsolicited attempts to contact his wife and, on September 28, 2015, plaintiff was called to a program office and confronted by defendant Williams. *Id.* Williams informed plaintiff of Michael Neely's complaints about his actions and directed plaintiff to cease any efforts to contact Dr. Neely. *Id.* Williams warned plaintiff that further attempts to contact Dr. Neely would result in his placement in administrative segregation and possible prosecution for stalking. *Id.* For his part, plaintiff was fixated on whether Dr. Neely herself disapproved of his attempts to contact her. *Id.* He asked whether she had submitted a written complaint and expressed doubts that she found his contact with her unwelcome. *Id.*

Two days later, on September 30, 2015, defendant Moss called plaintiff to the program office and indicated that Michael Neely had faxed a copy of the letter plaintiff had sent Dr. Neely. *Id.* at 6. Moss also warned plaintiff against any future attempts to contact Dr. Neely and informed him that the letter would be placed in his central file. *Id.* Plaintiff remained fixated on the question of whether Dr. Neely found his contacts undesirable and told Moss that he and Dr. Neely had previously dated. *Id.* Plaintiff went so far as to file an appeal which requested reinstatement of his ability to write Dr. Neely and expressed his belief that she would leave her husband to be with him once he was released from prison. *Id.* at 17.

/////

In December of 2015, plaintiff was called before defendant Justin to discuss a complaint he had filed against Moss regarding her warning not to contact Dr. Neely. *Id.* at 6. Plaintiff asserts that Justin was "respectful" during their meeting, but that defendant Myers – who was also present – threatened to retaliate against him by increasing his classification score and transferring him to another prison if he did not withdraw the complaint against Moss. *Id.* at 6-7. Plaintiff acknowledges, however, that Justin – who was Myers' superior officer – immediately reprimanded his subordinate and informed plaintiff that he would not be forced to withdraw his complaint or be retaliated against for pursuing it. *Id.* at 7.

In January of 2016, plaintiff met with Defendant Lee who, like the previous officials, reiterated that plaintiff was not to have any additional contact with Dr. Neely. *Id.* Lee also allegedly threatened retaliation against plaintiff if he did not withdraw a grievance – but as noted *supra* in fn. 1, these allegations are beyond the scope of the instant motion. *Id.*

Plaintiff's grievance was ultimately remanded with instructions to confirm with Dr. Neely whether she did, in fact, desire plaintiff to cease attempting to contact her. *Id.* at 8. Prison officials called Dr. Neely and, after speaking with her, informed plaintiff that she had unequivocally informed them that she had no desire to receive further communications from plaintiff. *Id.* Despite being so informed, plaintiff persisted in doubting that Dr. Neely was averse to his contact and instead imagined her telling prison officials to stop "cock blocking." *Id.* at 12.

## Legal Standards

A complaint may be dismissed under that rule for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

1        For purposes of dismissal under Rule 12(b)(6), the court generally considers only
2   allegations contained in the pleadings, exhibits attached to the complaint, and matters properly
3   subject to judicial notice, and construes all well-pleaded material factual allegations in the light
4   most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710
5   F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).
6        Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal
7   theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d
8   at 956.  Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the
9   claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).
10       Pro se pleadings are held to a less-stringent standard than those drafted by lawyers.
11  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  However, the Court need not accept as
12  true unreasonable inferences or conclusory legal allegations cast in the form of factual
13  allegations. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining*
14  *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

## Analysis

### I.    Consideration of Exhibit A

17       Defendants have, in conjunction with their motion to dismiss, submitted the letter plaintiff
18  sent to Dr. Neely and which, in turn, Michael Neely faxed to prison officials. ECF No. 26-1 at
19  30-40.  Generally, matters outside the pleadings cannot be considered on a motion to dismiss
20  without converting it to one for summary judgment. *See, e.g., San Pedro Hotel Co., Inc. v. City*
21  *of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998).  Consideration of documents incorporated by
22  reference in the complaint can, as defendants note in their motion, be appropriate in certain
23  circumstances.  Here, the letter and its contents are referenced in the complaint and plaintiff has
24  not raised any dispute as to its relevance or authenticity.  Thus, the court finds the letter
25  appropriate for consideration on that basis. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031,
26  1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider
27  documents in situations where the complaint necessarily relies upon a document or the contents
28  /////

4

of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.").

## II. Retaliation Claims

Defendants argue that the complaint, taken as true, fails to state a cognizable retaliation claim against them. The court agrees.

### A. Defendants Williams and Moss

The only pertinent allegations against Williams and Moss, as set forth *supra*, are that each called plaintiff into the program office and, based on Michael Neely's complaints, ordered him to stop contacting Dr. Neely. Their actions, as plaintiff himself alleges, were not based on any stated intent to retaliate for protected activity, but because they had received a civilian complaint regarding plaintiff's conduct. In *Rhodes v. Robinson*, the U.S. Court of Appeals for the Ninth Circuit identified the following factors for a successful retaliation claim in the prison context:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff's claims, taken as true, fail to meet two of the elements. A prisoner's harassing communication directed at a civilian does not fall within the ambit of "protected conduct." In *Pell v. Procunier*, the Supreme Court emphasized that incarceration necessarily resulted in the curtailment of an inmate's First Amendment rights and, consequently, he retained only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." 417 U.S. 817, 822 (1974). Obviously, one legitimate penological objective is the protection of the public at large from those who have been incarcerated. And here, specific members of the public advised correctional officials that they considered plaintiff's unsolicited communications to be harassing. Thus, the court concludes that plaintiff's attempts to communicate with Dr. Neely are not, in any conceivable sense, protected conduct. In the same vein, the court concludes that the actions of Williams and Moss – who, again, are accused only of warning plaintiff to stop his attempts to

communicate with Dr. Neely – reasonably advanced the legitimate correctional goal of protecting a member of the public.

### B. Defendants Justin and Myers

With respect to defendants Justin and Myers, plaintiff does allege that Myers threatened him with retaliatory action if he did not withdraw a grievance he had filed. Under most circumstances, this would be sufficient to state a cognizable retaliation claim. Here, however, plaintiff cannot reasonably argue that a person of ordinary firmness would be chilled from future First Amendment activity by Myers' threats because Justin – the superior officer – immediately and explicitly repudiated those threats and reassured plaintiff that he would not be retaliated against for his grievance. *See Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (In evaluating an alleged First Amendment violation, the proper inquiry asks "'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'").

### III. First Amendment Interference with Mail Claim

The court also finds that plaintiff's claims for mail interference arising out of the same incidents also fail. As defendants point out, inmates do not have an unfettered right to receive and send mail. *Procunier*, 417 U.S. at 822. The Ninth Circuit has noted that:

> [C]ensorship of prisoner mail is justified only if the regulation or practice in question [] further[s] an important or substantial governmental interest unrelated to the suppression of expression and the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.

*Barret v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008). Again taking the allegations of the complaint as true, both prongs are met in the instant case. As noted *supra*, protection of the public is a substantial government interest that is unrelated to the suppression of First Amendment freedoms. Moreover, the limitation imposed on plaintiff by defendants – that he cease contact with Dr. Neely – left all of his remaining mail privileges intact. It is difficult to conceive of a narrower limitation than directing an inmate to cease contact with one member of

/////

6

the public (who had made clear to correctional officials that neither she nor her family welcomed plaintiff's communications).

### IV. Procedural Due Process Claims

The court also finds that the complaint, taken as true, fails to allege viable procedural due process claims based on defendants' direction that he not persist in sending mail to Dr. Neely. Here plaintiff received all of the due process that was required insofar as he alleges that: (1) he was obviously notified by defendants that he was not to send mail to Dr. Neely; (2) he was afforded the opportunity to file a grievance on the issue and; (3) received a decision from a non-defendant prison official on that grievance. *See Procunier v. Martinez*, 416 U.S.396, 418-19 (1974) (holding that due process requires that "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence."); *see also Krug v. Lutz*, 329 F.3d 692, 697-98 (9th Cir. 2003) ("[T]his circuit has repeatedly acknowledged that withholding delivery of inmate mail must be accompanied by the minimum procedural safeguards established in *Martinez*.").

In light of the foregoing findings, the court finds it unnecessary to reach defendants' qualified immunity arguments.

### V. Motion for Court Intervention

As defendants correctly argue in their motion, plaintiff's unauthorized surreply contains crude and harassing language concerning a female correctional officer. *See* ECF No. 32 at 2-3. Such language serves no legitimate purpose in this litigation and plaintiff is admonished that, although he is proceeding pro se, he is nonetheless held to the basic standards of decency that the court expects of all litigants. Any future lapses on plaintiff's part will result in sanctions, including possible termination of this action.

### Conclusion

Accordingly, it is ORDERED that defendants' motion for court intervention (ECF No. 33) is GRANTED and plaintiff is warned that any future use of sexually harassing language will be sanctionable.

1      Further, it is RECOMMENDED that defendants' motion to dismiss (ECF No. 26) be

2 GRANTED and the following claims be DISMISSED with prejudice:[2]

3          a. Plaintiff's First Amendment claims for interference with mail against

4 defendants Justin, Lee, Moss, Myers, and Williams;

5          b. Plaintiff's retaliation claims against defendants Justin, Myers, Moss and

6 Williams; and

7          c. Plaintiff's claims against Williams, Myers, Moss, and Justin for violating his

8 right to procedural due process under the Fourteenth Amendment.

9      These findings and recommendations are submitted to the United States District Judge

10 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11 after being served with these findings and recommendations, any party may file written

12 objections with the court and serve a copy on all parties.  Such a document should be captioned

13 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

14 within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

15 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

16 Dated:  September 25, 2020.

17                                  _____
                                         EDMUND F. BRENNAN
18                                    UNITED STATES MAGISTRATE JUDGE

---

[2] The court finds dismissal with prejudice appropriate here insofar as plaintiff has made his allegations clear and any amendment – short of total and impermissible alteration of his claims – would be futile.  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (holding that "futility of amendment" justifies dismissal with prejudice).